UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

| | |
|---|---|
| AGRI-MARKETING, INC., *doing business as* USA GYPSUM, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | :     No. 5:17-cv-00627 |
| | : |
| PROTERRA SOLUTIONS, LLC; STANLEY GIBSON; DEDORAH GIBSON; and MARK LAFON, | : |
| | : |
| Defendants. | : |

_____

**O P I N I O N**

**Defendants' Motion to Dismiss, ECF No. 14 – Granted in part**

**Joseph F. Leeson, Jr.**                                                    **March 20, 2018**
**United States District Judge**

**I        Introduction**

Defendants ProTerra Solutions, LLC, Stanley Gibson, Deborah Gibson, and Mark Lafon

move to dismiss Plaintiff Agri-Marketing's Second Amended Complaint in its entirety for

improper venue and, in the alternative, move to dismiss Counts III, IV, and V of the Second

Amended Complaint for failure to state a claim. For the reasons set forth below, the Court denies

Defendants' motion to dismiss for improper venue, but grants its motion to dismiss Counts III,

IV, and V.

**II.        Background**

**A.        Factual Background**

The Second Amended Complaint alleges the following facts.

Plaintiff Agri-Marketing is a Pennsylvania corporation dedicated to converting drywall to beneficial uses. Second Am. Compl. ¶¶ 5, 13, ECF No. 13. Defendant ProTerra Solutions is a Florida limited liability company that advertised and promoted itself as having the requisite resources to design, furnish, and install integrated processing solutions for recyclers. *Id.* ¶¶ 6, 16. Defendants Stanley Gibson, Deborah Gibson, and Mark Lafon are members/managers of Proterra. *Id.* ¶¶ 7-9.[1]

In December 2013, Agri-Marketing began discussions with ProTerra to engage the latter in designing, manufacturing, delivering, and installing an integrated processing solution to recycle drywall materials (i.e., a "recycling system"). *Id.* ¶ 17. ProTerra, by its agents and employees Mr. Gibson and Mr. Lafon, represented to Agri-Marketing that it had expertise in designing and fabricating equipment for solutions in the environmental processing industries, and specifically that it possessed the skill, staff, and expertise necessary to design, manufacture, deliver, and install a recycling system. *Id.* ¶ 19. In May 2014, Agri-Marketing signed an Agreement with ProTerra, memorializing its acceptance of the latter's offer to design, furnish, and install an integrated processing solution ("the Recycling System") for recovered wallboard material at Agri-Marketing's facility in Denver, Pennsylvania, in consideration of $886,000. *See id.* ¶¶ 22-25.[2] The Agreement includes a project overview, an extensive list of items to be provided by ProTerra, and payment terms, among other items. *See id.* ¶¶ 28-36.

From January to April 2015, ProTerra performed work related to the Recycling System, during which time Mr. Gibson frequently visited the jobsite and Mr. Lafon directed numerous

[1]  In or around May 2013, Agri-Marketing engaged non-party Doug Logan as a consultant concerning the Recycling System. *Id.* ¶ 18. At some point after Agri-Marketing hired Logan as a consultant, Logan was hired by ProTerra as an employee and continued working for ProTerra from his home office in Elizabethtown, Pennsylvania. *Id.* ¶ 24.
[2]  The Agreement is attached as Exhibit B to the Amended Complaint. ECF Nos. 7-2 and 7-3.

emails and phone calls to Agri-Marketing in Pennsylvania and visited the jobsite on one occasion. *Id.* ¶¶ 43-52. In April 2015, ProTerra demanded a $100,000 payment from Agri-Marketing, purportedly in order to pay vendors for work on the Recycling System. *Id.* ¶¶ 54-57. Agri-Marketing provided the payment but alleges, upon information and belief, that ProTerra did not use these funds to pay vendors or for any purpose related to the Recycling System. *Id.* ¶¶ 57-58.

On or about April 3, 2015, ProTerra assured Agri-Marketing that the project would be complete on April 20, 2015, and that ProTerra's crew would stay until its completion. *Id.* ¶ 59. After ProTerra failed to complete the project by that date, Mr. Gibson visited the jobsite on May 20, 2015, and promised to return around May 26, 2015. *Id.* ¶¶ 65-67. Mr. Gibson never returned and the project remains incomplete. *Id.* ¶ 68.

To date, Agri-Marketing has paid to ProTerra $817,000 for the incomplete Recycling System. *Id.* ¶ 70. Agri-Marketing has experienced a number of failures with the Recycling System due to deficiencies in ProTerra's work and has communicated these failures to ProTerra, but has not received any response. *Id.* ¶¶ 71-102.

Following the filing of the Agri-Marketing's initial Complaint in this matter, Ms. Gibson signed Articles of Dissolution for ProTerra, which were filed with the Florida Secretary of State in March 2017, stating that that the "occurrence that resulted in the limited liability company's dissolution" is "THIS COMPANY HAS BEEN INACTIVE FOR OVER A YEAR AND A HALF." *Id.* ¶ 109. Agri-Marketing alleges that "[b]ased upon Defendant's communications and interactions with [Agri-Marketing] . . . it is believed that Defendants are intentionally seeking to dissolve business entities, shift assets, and otherwise evade their obligations to, and judgments entered in favor of, [Agri-Marketing] as against [ProTerra]." *Id.* ¶ 110. Further, "[a]s a result of the dissolution of [ProTerra], Defendants have extended their fraudulent conduct to the improper

dissolution, winding up, and shifting of assets from [ProTerra] . . . and are continuing to perpetuate a fraud against [Agri-Marketing] in persisting in this course of conduct." *Id.* ¶ 112.

Based on these allegations, in Counts I and II of the Second Amended Complaint, Agri-Marketing asserts claims of breach of contract and breach of warranty against ProTerra only. In Counts III and IV, it asserts claims of fraud and fraudulent transfer against all Defendants, namely, ProTerra, Mr. Gibson, Ms. Gibson, and Mr. Lafon. Finally, in Count V, Agri-Marketing asserts an unjust enrichment claim against the individual Defendants only.

**B.     Procedural Background**

Agri-Marketing filed its initial Complaint in this matter in February 2017. ECF No. 1. After Defendants filed a motion to dismiss, Agri-Marketing filed an Amended Complaint. ECF No. 7. Defendants again filed a motion to dismiss and Agri-Marketing moved to file a Second Amended Complaint. *See* ECF Nos. 9, 11. The Court granted the motion, permitting Agri-Marketing to file its Second Amended Complaint, but ordered that no further amendments would be permitted, absent good cause. ECF No. 12. Defendants now move to dismiss the Second Amended Complaint in its entirety due to improper venue. In the alternative, they move to dismiss the claims asserted in Counts III through V for failure to state a claim and (with respect to certain claims and Defendants) lack of personal jurisdiction.

**III.   Standards of Review**

**A.     Rule 12(b)(1) Motion to Dismiss – Lack of Personal Jurisdiction**

"To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff bears the burden of establishing the court's jurisdiction over the moving defendants." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004) (citation omitted). If the court does not hold an evidentiary hearing, "the plaintiff need only establish a prima facie case of personal jurisdiction

and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Id.* (citation omitted).

**B.      Rule 12(b)(6) Motion to Dismiss – Failure to State a Claim**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In rendering a decision on a motion to dismiss, this Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted).

**III.    Analysis**

**A.      Venue is not improper in this Court.**

Defendants initially move to dismiss the Second Amended Complaint in its entirety for improper venue, pursuant to paragraph 13 of the Terms and Conditions of Sale provided on the final page of the Agreement between Agri-Marketing and ProTerra. That paragraph is titled "General" and provides in pertinent part as follows:

> In the event Company places this agreement in the hands of an attorney for collection of the purchase price or other sums owing to Company from Purchaser, Purchaser agrees to pay Company's reasonable costs and expenses of collection, including attorney's fees, whether or not any suit or action is filed and any additional costs, expenses and attorneys' fees incurred at trial or on appeal. Purchaser consents to personal jurisdiction in Florida and venue in Hillsborough County Circuit Court. Statements about the product(s) may have been made to Purchaser by representatives of Company. Such statements do not constitute warranties and shall not be relied on by Purchaser and are not part of this agreement. The entire agreement is embodied in this writing. THIS WRITING CONSTITUTES THE FINAL EXPRESSION OF THE PARTIES AGREEMENT

AND IS A COMPLETE AND EXCLUSIVE STATEMENT OF THE TERMS
OF THE AGREEMENT.

Am. Compl. Ex. B, ECF Nos. 7-2 and 7-3.

In particular, Defendants rely on the second sentence quoted above, which provides that "Purchaser [Agri-Marketing] consents to personal jurisdiction in Florida and venue in Hillsborough County Circuit Court." Defendants contend that this is a "forum selection clause" that renders venue improper anywhere other than the Hillsborough County Circuit Court. Agri-Marketing responds that this clause is limited by the preceding sentence, such that the clause applies only to collection actions filed by the Company (ProTerra) against the Purchaser (Agri-Marketing). Defendants reply that the paragraph (which, they point out, is titled "GENERAL") does not merely contain terms for collection actions but rather contains multiple, miscellaneous terms, and that the forum selection clause should therefore be interpreted independently from the sentence concerning collection actions.

"[T]he appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens.*" *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas,* 571 U.S. 49, 134 S. Ct. 568, 580 (2013); *see Collins on behalf of herself v. Mary Kay, Inc.*, 874 F.3d 176, 180 (3d Cir. 2017). Forum selection clauses are either mandatory or permissive. *See Dawes v. Publish Am. LLLP*, 563 F. App'x 117, 118 (3d Cir. 2014).[3] A permissive clause authorizes jurisdiction in a designated forum but does not prohibit

---

[3]     Alternatively, some courts have indicated that it may be a misnomer to speak of a "permissive forum selection clause." *See Int'l Bus. Software Sols., Inc. v. Sail Labs Tech., AG*, 440 F. Supp. 2d 357, 363 n.2 (D.N.J. 2006) ("[A] '[p]ermissive forum selection clause,' which is perhaps more appropriately referred to as 'consent to jurisdiction' clause, merely specifies [the] court empowered to hear litigation, in effect waiving any objection to personal jurisdiction in venue; such a clause is 'permissive' since it allows parties to air any dispute in that court without requiring them to do so." (*quoting S & D Coffee, Inc. v. GEI Autowrappers*, 995 F. Supp. 607, 609 (M.D.N.C. 1997))); *see also Koresko v. Nationwide Life Ins. Co.*, 403 F. Supp. 2d 394, 400

litigation elsewhere, whereas a mandatory clause dictates an exclusive forum for litigation under the contract. *Id.* If a contract contains a mandatory forum selection clause, then the court applies the *forum non conveniens* analysis as modified by the United States Supreme Court in *Atlantic Marine Construction Co. v. U.S. District Court*, 571 U.S. 49 (2013), according to which the forum selection clause should be enforced absent "extraordinary circumstances." *See Collins*, 874 F.3d at 186. But if the contract contains a permissive forum selection clause, then a traditional *forum non conveniens* analysis applies. *See Dawes*, 563 F. App'x at 118; *Networld Commc'ns, Corp. v. Croatia Airlines, D.D.*, No. CIV.A. 13-4770 SDW, 2014 WL 4724625, at *3 (D.N.J. Sept. 23, 2014) ("Given that the forum selection clause here is permissive, this Court is satisfied that the traditional *forum non conveniens* test embraced by the majority of post-*Atlantic Marine* courts should be utilized here.")

The parties fail to discuss in their briefing whether the clause at issue in this case is permissive or mandatory. But, as set forth above, the clause merely provides that Agri-Marketing "consents" to personal jurisdiction in Florida and venue in Hillsborough County Circuit Court, and there is no language in the clause indicating that the Hillsborough County Circuit Court shall have exclusive jurisdiction. "Where parties enter into a contract and merely consent to jurisdiction in a particular forum, they do not preclude the jurisdiction of other forums." *Polsky v. Hall City Centre Associates Ltd. P'ship*, 1989 WL 48109, at *3 (E.D. Pa. 1989). Based on this principle, the clause at issue here is permissive. *See Samuel T. Freeman & Co. v. Hiam*, No. CIV.A. 12-1387, 2012 WL 2120474, at *8 (E.D. Pa. June 11, 2012) ("It is well-established that clauses that merely empower a court to hear litigation and in effect waive any objection to

---

(E.D. Pa. 2005) ("[The plaintiffs] conflate the concept of forum selection with that of consent to venue and personal jurisdiction. Where the former provides that all litigation under the contract must be brought in the selected forum, the latter permits but does not compel that the action be brought in a particular jurisdiction.").

personal jurisdiction in that court—commonly referred to as 'consent to jurisdiction' clauses—are 'permissive' in that they allow parties to air any dispute in a specific court without requiring them to do so."); *Zokaites v. Land-Cellular Corp.*, 424 F. Supp. 2d 824, 835 (W.D. Pa. 2006) ("[W]here the agreement indicates the parties only agreed that a particular forum was appropriate and each party will 'irrevocably submit' to the jurisdiction of that forum, a permissive forum clause is created and redress may be obtained in another appropriate court.").

Accordingly, because there is a permissive forum selection clause in this case, the standard *forum non conveniens* analysis applies. This analysis "should be an exercise in structured discretion founded on a procedural framework guiding the district court's decision making process." *Delta Air Lines, Inc. v. Chimet, S.p.A.*, 619 F.3d 288, 295 (3d Cir. 2010) (quoting *Lacey v. Cessna Aircraft Co.*, 862 F.2d 38, 43 (3d Cir. 1988)). First, "[t]he court must . . . decide whether an adequate alternative forum exists to hear the case." *Id.* Second, "[t]he court must then evaluate the amount of deference due to the plaintiff's choice of forum." *Id.* Finally, the court must "consider and balance" the private and public interest factors set forth by the U.S. Supreme Court in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947). *Id.* "The defendant bears the burden of persuasion at each stage in the analysis, and a district court abuses its discretion if it fails to hold the defendant to its burden." *Id.*

Defendants have not provided any briefing on the *forum non conveniens* factors, and thus have failed to meet their burden. In short, even if the Hillsborough County Circuit Court is an adequate venue to hear this case, Defendants have made no showing to overcome the "strong presumption of convenience [that] exists in favor of a domestic plaintiff's chosen forum." *See*

*Kisano Trade & Invest Ltd. v. Lemster*, 737 F.3d 869, 873 (3d Cir. 2013). As a result, the motion to dismiss for improper venue is denied.[4]

**B.    The Court lacks personal jurisdiction over Deborah Gibson with respect to Agri-Marketing's fraud claims in Count III.**

Defendants move to dismiss all claims against Deborah Gibson, contending that this Court lacks personal jurisdiction over her because Agri-Marketing has failed to allege that Ms. Gibson had any contact with Pennsylvania. Agri-Marketing responds that the Court has both general and specific personal jurisdiction over Ms. Gibson. According to Agri-Marketing, this Court has general jurisdiction over all Defendants (including Ms. Gibson) because ProTerra hired and maintained an employee (Doug Logan) in Lancaster, Pennsylvania. Further, Agri-Marketing contends that this Court has specific jurisdiction over Ms. Gibson because Ms. Gibson "was involved in the day-to-day operations of the [ProTerra] business, producing invoices, depositing funds, and facilitating interaction between [Agri-Marketing] and [ProTerra]," Second Am. Compl. ¶ 44, and because ProTerra "directed phone calls, e-mails, and text messages to Pennsylvania regarding estimates, proposals, and plans." *Id.* ¶ 23; *see also* Am. Compl. Ex. A and C, ECF Nos. 7-2 and 7-3.

A district court may assert either general or specific jurisdiction over non-resident defendants. First, with respect to general jurisdiction, the "paradigm forum" in which an individual defendant (in contrast to a corporate defendant) is amenable to general jurisdiction is the individual's domicile. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S.

---

[4]    Because the Court has determined that the forum selection clause is permissive and that Defendants have failed to meet their burden under the *forum non conveniens* analysis, it is unnecessary to determine whether the forum selection clause broadly applies to all actions, as Defendants contend, or just collection actions, as Agri-Marketing contends.

915, 924 (2011).[5] "[T]o assert general jurisdiction in Pennsylvania over an individual, a plaintiff bears the burden of proving the individual's presence or domicile in the Commonwealth at the time of service, or the individual's consent to suit." *Farber v. Tennant Truck Lines, Inc.*, 84 F. Supp. 3d 421, 434 (E.D. Pa. 2015) (quoting *Comerota v. Vickers,* 170 F. Supp. 2d 484, 487 (M.D. Pa. 2001)). As Agri-Marketing has failed to allege any of these circumstances, it has failed to show that this Court has general jurisdiction over Ms. Gibson.

"[S]pecific jurisdiction is present only if the plaintiff's cause of action arises out of a defendant's forum-related activities, such that the defendant should reasonably anticipate being haled into court in that forum." *Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001) (internal quotation marks omitted). "Such a determination is claim specific." *Id.* In determining whether there is specific jurisdiction, the court undertakes a three-part inquiry. *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009). First, the defendant must have purposefully directed its activities at the forum. *Id.* Second, the litigation must arise out of or relate to at least one of those activities. *Id.* And third, if the first two requirements have been met, a court may consider whether the exercise of jurisdiction otherwise comports with fair play and substantial justice. *Id.* "The first two parts of the test determine whether a defendant has the requisite minimum contacts with the forum." *Id.*

In view of the claim-specific nature of this inquiry, the Court begins by considering whether it has specific jurisdiction over Ms. Gibson with respect to Agri-Marketing's fraud claims alleged in Count III of the Second Amended Complaint. As discussed in further detail

---

[5]    The Supreme Court has expressed doubt about whether the concept of general jurisdiction even applies to nonresident individual defendants. *See Burnham v. Superior Court of Cal.,* 495 U.S. 604, 610 n.1 (1990) (plurality opinion) (observing that "[i]t may be that [general jurisdiction] applies only to corporations").

below, in Count III Agri-Marketing alleges that Mr. Gibson and Mr. Lafon made fraudulent statements that induced Agri-Marketing to sign the Agreement, that ProTerra failed to complete the Recycling System promised in the Agreement, and that ProTerra fraudulently induced Agri-Marketing to make accelerated payments for the work on the Recycling System. But there are no allegations that Ms. Gibson made any statements or communications to Agri-Marketing or that she visited Pennsylvania as part of ProTerra's work on the Recycling System or for any other reason. At most, the Second Amended Complaint alleges that, as part of her involvement in the operation of ProTerra in Florida, Ms. Gibson "facilitat[ed] interaction between [Agri-Marketing] and [ProTerra]." Second Am. Compl. ¶ 44.[6] But this vague assertion fails to plausibly allege that Ms. Gibson had the requisite minimum contacts with Pennsylvania to establish this Court's jurisdiction over her in connection with this claim. Accordingly, Agri-Marketing has failed to allege that this Court has specific jurisdiction over Ms. Gibson with respect to its fraud claims asserted in Count III, and those claims are dismissed as to Ms. Gibson.

**C.      Agri-Marketing's fraud in the inducement claim is barred by the parol evidence rule.**

As indicated above, in Count III of the Second Amended Complaint Agri-Marketing alleges that Mr. Gibson and Mr. Lafon made fraudulent representations to it about ProTerra's technical knowhow and financial wherewithal, which Agri-Marketing relied upon when it hired and contracted with ProTerra. *See* Second Am. Compl. ¶¶ 125-132. In response to these allegations, Defendants contend that to the extent that Agri-Marketing seeks to assert a fraud in the inducement claim, any such claim must be dismissed pursuant to the parol evidence rule

---

[6]      As set forth above, the Second Amended Complaint also alleges that *ProTerra* "directed phone calls, e-mails, and text messages to Pennsylvania regarding estimates, proposals, and plans." Second Am. Compl. ¶ 23. But there is no allegation that *Ms. Gibson* directed these communications.

because the Agreement between the parties includes an integration clause. In response, Agri-Marketing contends that it has successfully alleged a fraud in the inducement claim, but it does not specifically address Defendants' parol evidence argument.[7]

In Pennsylvania, "it is now settled" that where there is an integrated contract, "the parol evidence rule bars claims of fraud in the inducement and only allows claims of fraud in the execution." *See Coram Healthcare Corp. v. Aetna U.S. Healthcare, Inc.*, 94 F. Supp. 2d 589, 592 (E.D. Pa. 1999). "Thus, a party may assert that provisions of a written agreement were omitted by fraud, accident or mistake, but not that it was induced to enter a contract by fraudulent misrepresentation." *Id.* (internal quotation omitted). This rule "is premised on the principle that if a sophisticated, well-represented party . . . intends to rely on significant representations made prior to the execution of a fully integrated contract, that party can protect itself from fraud or mistake by including those representations in the final written agreement." *Id.*

As quoted above, the Agreement in this case includes an integration clause providing that "THIS WRITING CONSTITUTES THE FINAL EXPRESSION OF THE PARTIES AGREEMENT AND IS A COMPLETE AND EXCLUSIVE STATEMENT OF THE TERMS OF THE AGREEMENT." Agri-Marketing does not dispute the validity or applicability of this integration clause, nor does it allege that any provisions of the Agreement were omitted by fraud

---

[7]    Parties who fail to adequately brief their opposition to motions do so at the risk of having those motions granted as uncontested under Rule 7.1(c) of the Rules of Civil Procedure for the United States District Court for the Eastern District of Pennsylvania. *See Lada v. Delaware Cty. Cmty. Coll.*, No. 08-CV-04754, 2010 WL 11561100, at *1 (E.D. Pa. May 12, 2010). "Fully developed legal argument, citation to legal authority, and discussion of the relevant facts aid this Court in performing its duty, and ultimately in serving the ends of justice." *Copenhaver v. Borough of Bernville*, No. CIV.A. 02-8398, 2003 WL 26616224, at *2 n.1 (E.D. Pa. Jan. 10, 2003). Here, Agri-Marketing's brief mentions, but fails to address, Defendants' parol evidence argument. This failure justifies dismissal of the fraudulent inducement claim. But out of an abundance of caution, the Court will address the merits of this claim.

or mistake. Accordingly, Agri-Marketing's claims of fraud in the inducement are barred by Pennsylvania's parol evidence rule and are dismissed.

As mentioned above, when the Court granted Agri-Marketing's Motion to File a Second Amended Complaint, the Court advised that no further amendments would be permitted, absent good cause. In its Brief in Opposition to ProTerra's present Motion, Agri-Marketing states that "if the Court determines that [its] Second Amended Complaint does not satisfy the requirements of F.R.C.P. 8(a)(2) or F.R.C.P. 9(b)," then Agri-Marketing "seeks leave to amend the complaint to provide additional factual allegations supportive of its claims." Pl.'s Br. Opp'n 41-42, ECF No. 15. This request does not suffice to show good cause for amendment. Accordingly, Agri-Marketing's fraudulent inducement claim is dismissed with prejudice.

**D.      Agri-Marketing's fraud in the performance claim is barred by the gist of the action doctrine.**

In addition to its fraudulent inducement claims, Agri-Marketing also alleges claims of fraud in the performance against all Defendants. Specifically, Agri-Marketing alleges that Defendants "failed to deliver a complete Recycling System as promised, and specifically one that worked according to the Agreement." Second Am. Compl. ¶ 133. Defendants contend that Agri-Marketing's fraud in the performance claim is barred by the gist of the action doctrine because the alleged fraud concerns conduct relating to the Agreement. In response, Agri-Marketing's brief fails to address this argument.[8]

"[T]he gist of the action doctrine 'is designed to maintain the conceptual distinction between breach of contract claims and tort claims.'" *KBZ Commc'ns Inc. v. CBE Techs. LLC*,

---

[8]      Again, although Agri-Marketing's failure to adequately brief a response to Defendants' gist of the action argument justifies dismissal of the fraud in the performance claim, the Court will address the merits of the claim out of an abundance of caution.

634 F. App'x 908, 910 (3d Cir. 2015) (quoting *eToll, Inc. v. Elias/Savion Advert., Inc.*, 811 A.2d 10, 14 (Pa. Super. Ct. 2002)). The doctrine bars tort claims:

> (1) arising solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where the liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract.

*Id.* (quoting *eToll*, 811 A.2d at 19). Here, it is undisputed that Agri-Marketing's fraud in the performance claims "arise solely from the alleged underlying breach of contract" and that there is "no broader social duty that [Defendants] owed to [Agri-Marketing] that they supposedly violated." *See id.* Moreover, as Defendants point out, Agri-Marketing's tort damages are the same as its contract damages, which further supports the notion that the gist of Agri-Marketing's action is contractual. Accordingly, Agri-Marketing's fraud in the performance claim is barred by the gist of the action doctrine and is dismissed. Because, as explained above, Agri-Marketing has not shown good cause for amendment, the claim is dismissed with prejudice.

### E.        Agri-Marketing fails to plausibly allege a fraudulent transfer claim.

Count IV of the Second Amended Complaint alleges a fraudulent transfer claim against all Defendants. As discussed above, this claim is based on the allegation that, following the filing of the Agri-Marketing's initial Complaint in this matter, Ms. Gibson filed Articles of Dissolution for ProTerra with the Florida Secretary of State in March 2017, along with a statement that the reason for the dissolution was that that ProTerra had been inactive for over a year and a half. *Id.* ¶ 109. In addition, as set forth above, Agri-Marketing alleges that "[b]ased upon Defendant's communications and interactions with [Agri-Marketing] . . . it is believed that Defendants are intentionally seeking to dissolve business entities, shift assets, and otherwise evade their

obligations to, and judgments entered in favor of,[9] [Agri-Marketing] as against [ProTerra]." *Id.* ¶ 110. Further, "[a]s a result of the dissolution of [ProTerra], Defendants have extended their fraudulent conduct to the improper dissolution, winding up, and shifting of assets from [ProTerra] . . . and are continuing to perpetuate a fraud against [Agri-Marketing] in persisting in this course of conduct." *Id.* ¶ 112. Similarly, Agri-Marketing alleges that all Defendants "dissolved business entities and established new 'shell companies' when it proved financially expedient to do so when threatened with a potential liabilities . . . and shift[ed] assets even during the pendency of the instant litigation, and generally operated business entities as a fascade [sic] for the operation of its owner." *Id.* ¶ 150. Finally, Agri-Marketing alleges that ProTerra's dissolution exhibits several of the "badges of fraud" identified under the Pennsylvania Uniform Fraudulent Transfer Act. *Id.* ¶ 151 (citing 12 Pa. Cons. Stat. § 5104(b)).

Defendants contend that Agri-Marketing's fraudulent transfer claim fails for two reasons: (1) Agri-Marketing has failed to plead facts supporting this Court's personal jurisdiction over the Defendants with respect to the fraudulent transfer claim; and (2) Agri-Marketing's fraudulent transfer allegations fail to meet the heightened pleading standard set forth by Federal Rule of Civil Procedure 9(b).[10] The Court begins by considering the jurisdiction argument.

i.    **This Court does not have specific jurisdiction over Defendants with respect to Agri-Marketing's fraudulent transfer claim.**

As discussed above, a district court may assert either general or specific jurisdiction over non-resident defendants. First, with respect to general jurisdiction, this Court lacks general jurisdiction over the individual Defendants, as there is no allegation that any of these Defendants

---

9       The Second Amended Complaint does not allege that Agri-Marketing currently has obtained any judgments against ProTerra, so the Court assumes this refers to future judgments.
10      Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9.

live in Pennsylvania, were served in Pennsylvania, or consented to jurisdiction in Pennsylvania. With respect to the ProTerra, general jurisdiction can be exercised over a corporate defendant when that defendant has maintained "continuous and systematic" contacts with the forum state. *See D'Jamoos*, 566 F.3d at 107. But it is "incredibly difficult to establish general jurisdiction [over a corporation] in a forum *other* than the place of incorporation or principal place of business." *Chavez v. Dole Food Co., Inc.*, 836 F.3d 205, 223 (3d Cir. 2016) (quoting *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014)). Agri-Marketing rests its general jurisdiction argument on its allegation that at some time after May 2013, ProTerra hired a man named Doug Logan, who worked for ProTerra from his home office in Elizabethtown, Pennsylvania. This does not show "continuous and systematic" contacts with Pennsylvania and is therefore insufficient to establish general jurisdiction over ProTerra.

With respect to specific jurisdiction, the parties agree that most or all of the conduct alleged in Count IV is alleged to have occurred in Florida, not Pennsylvania, and that the Court's specific jurisdiction over the Defendants with respect to Count IV therefore should be analyzed under the "effects test" established by the Supreme Court in *Calder v. Jones*, 465 U.S. 783 (1984). Under this test, a plaintiff can demonstrate personal jurisdiction if he or she shows:

> (1) The defendant committed an intentional tort;
> (2) The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort;
> (3) The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity.

*Marten v. Godwin*, 499 F.3d 290, 297 (3d Cir. 2007) (citing *IMO Indus. Inc. v. Kiekert AG*, 155 F.3d 254, 265-66 (3d Cir. 1998)). Here, Agri-Marketing alleges that Defendants fraudulently transferred assets for the purpose of preventing Agri-Marketing from collecting a debt. Allegations of this type have been found sufficient to establish jurisdiction under the effects test.

*See Gambone v. Lite Rock Drywall*, 288 F. App'x 9, 14 (3d Cir. 2008) (holding that allegations that a defendant "(1) participated in a fraudulent conveyance, which is a species of the intentional tort of fraud, (2) for the purpose of preventing the plaintiffs, who are Pennsylvania creditors, from collecting on a judgment rendered in their favor by a court in Pennsylvania, (3) and thus 'expressly aimed' his conduct at the forum" were sufficient to establish the court's jurisdiction); *Sugartown Worldwide LLC v. Shanks*, No. CIV.A. 14-5063, 2015 WL 1312572, at *7 (E.D. Pa. Mar. 24, 2015) (finding that allegedly fraudulent transfers were "expressly aimed" at Pennsylvania where there was "apparently no other business reasons for these transfers" other than to avoid the judgment of the Pennsylvania creditor). But, as discussed below, the problem with Agri-Marketing's fraudulent transfer claim is that it fails to plausibly allege the first element under the *Calder* test, namely that Defendants committed a tort (here, a fraudulent transfer). As a result, this Court lacks jurisdiction over the Defendants on this claim.

ii.     **Agri-Marketing fails to plausibly allege a fraudulent transfer claim.**

Defendants contend that Agri-Marketing has failed to plead fraudulent transfer with sufficient particularity under Rule 9(b) because the Second Amended Complaint "does not set forth any detail regarding the fraudulent transfers, why the transfers were fraudulent, or what roles each Defendant had in the alleged fraudulent transfers." Defs.' Br. Supp. Mot. 21, ECF No. 14-1. Agri-Marketing responds that its allegation that, shortly after the initial Complaint in this matter was filed, Deborah Gibson filed articles of dissolution for ProTerra, along with an affirmation stating that ProTerra had been inactive for over a year and a half, suffices to state a fraudulent transfer claim because this Court can "presume" that a fraudulent transfer occurred as a result of the dissolution. Pl.'s Br. Opp'n 34-35, ECF No. 15.

Agri-Marketing's fraudulent transfer claim derives from Pennsylvania's version of the Uniform Fraud Transfer Act (PUFTA). 12 Pa. Con. Stat. § 5101, et seq. PUFTA is designed "to protect creditors from debtors who might try to shelter assets by sham transactions, thereby depriving the creditor of his ability to collect from the debtor." *United States v. Rocky Mountain Holdings, Inc.*, No. CIV A 08-3381, 2009 WL 564437, at *3 (E.D. Pa. Mar. 4, 2009) (quoting *Bell v. Wyatt*, Civ. A. No. 03–3225, 2005 WL 1522015, at *1 (Pa. Com. Pl. 2005)). The language of the statute states:

> (a) General rule.—A transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
>> (1) with actual intent to hinder, delay or defraud any creditor of the debtor; or
>>
>> (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>>
>>> (i) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>>>
>>> (ii) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

12 Pa. Cons. Stat. § 5104.

Accordingly, "section 5104 covers two different types of fraudulent transfers. The first demands a showing of actual intent by the transferee to defraud," whereas the second "presumes constructive fraud" where the plaintiff has established the elements specified in § 5104(a)(2). *Rocky Mountain Holdings*, 2009 WL 564437, at *3. The first type is analyzed under Rule 9(b), whereas the second type is required only to meet the demands of Rule 8. *See id.* at *4. The Second Amended Complaint does not clearly indicate whether it is alleging intentional fraud (under § 5104(a)(1)) or constructive fraud (under § 5104(a)(2)) or both. But under either

standard, Agri-Marketing fails to state a claim, as it fails to allege the existence of any particular transfer. At most, the Second Amended Complaint alleges that Defendants "shift[ed] assets" at some point after agreeing to complete the Recycling System in order to avoid ProTerra's obligations to Agri-Marketing. But are no allegations identifying any particular transfer, i.e., which assets were transferred, when such a transfer occurred, who made the transfer, and to whom the assets were transferred. In its briefing, Agri-Marketing chiefly relies on its allegation that Ms. Gibson filed articles of dissolution for ProTerra. But such a filing is not, in itself, a transfer, and there is no support for the notion that this Court can "presume" the existence of a transfer simply on the basis of Ms. Gibson's filing. In short, at this point Agri-Marketing's fraudulent transfer allegations do not rise above the speculative level and, accordingly, fail to state a claim. *See River Rd. Dev. Corp. v. Carlson Corp.-Ne.*, No. CIV. A. 89-7037, 1990 WL 6092, at *4 (E.D. Pa. Jan. 25, 1990) (dismissing fraudulent conveyance claim under the pleading standards of Rule 8 because the claim "fail[ed] to allege that a specific conveyance has taken place"). Because, as explained above, Agri-Marketing has not shown good cause for amendment, the claim is dismissed with prejudice.

**F.      Agri-Marketing fails to state a claim for unjust enrichment.**

In Count V of the Second Amended Complaint, Agri-Marketing alleges an unjust enrichment claim against the individual Defendants only—namely, Mr. Gibson, Ms. Gibson, and Mr. Lafon.[11] Defendants move to dismiss this claim, contending that, under Pennsylvania law, unjust enrichment claims are inapplicable where the relationship between the parties is founded

---

[11]      Agri-Marketing's unjust enrichment claim is found in paragraphs 153 through 156 of the Second Amended Complaint. Although the heading for Count V indicates that this Count is brought only against the individual Defendants, paragraph 154 alleges that a singular "Defendant" (presumably ProTerra) has been unjustly enriched by retaining payments from Agri-Marketing. Nevertheless, paragraphs 155 and 156 make clear that this claim is alleged only against the individual Defendants.

on a contract. Further, although Defendants acknowledge that an unjust enrichment claim can be pleaded in the alternative to a contract claim, they contend that Agri-Marketing has failed to plead its unjust enrichment claim in the alternative and, in any event, has failed to plead its unjust enrichment claim with sufficient particularity under Rule 9(b).

"Under Pennsylvania law, to state a claim for unjust enrichment, the plaintiff must allege 'benefits conferred on one party by another, appreciation of such benefits by the recipient, and acceptance and retention of these benefits under such circumstances that it would be inequitable [or unjust] for the recipient to retain the benefits without payment of value.'" *Premier Payments Online, Inc. v. Payment Sys. Worldwide*, 848 F. Supp. 2d 513, 527 (E.D. Pa. 2012) (quoting *Allegheny Gen. Hosp. v. Philip Morris*, 228 F.3d 429, 447 (3d Cir. 2000)). Courts have found that unjust enrichment claims under Pennsylvania law fall into two categories:

> (1) a quasi-contract theory of liability, in which case the unjust enrichment claim is brought as an alternative to a breach of contract claim; or (2) a theory based on unlawful or improper conduct established by an underlying claim, such as fraud, in which case the unjust enrichment claim is a companion to the underlying claim.

*Whitaker v. Herr Foods, Inc.*, 198 F. Supp. 3d 476, 492 (E.D. Pa. 2016). Here, the basis of Agri-Marketing's unjust enrichment claim is unclear. Because the unjust enrichment claim is asserted against the individual Defendants only, it does not appear to have been pleaded in the alternative to Agri-Marketing's contract claim, which is asserted against ProTerra only. Rather, the focus of the unjust enrichment claim appears to be the fraudulent transfer claim alleged in Count IV. *See* Second Am. Compl. ¶ 155 ("Through the fraudulent dissolution of PTS by Deborah Gibson, Mark Lafon, the individual managers, members, and owners of PTS have been unjustly enriched through the believed siphoning and diversion of funds from PTS to other business entities and/or the individual managers, members, and owners themselves ostensibly to avoid liability stemming from the instant litigation."). But to the extent that the unjust enrichment claim is pleaded as a

companion to Agri-Marketing's fraudulent transfer claim, the unjust enrichment claim "will rise

or fall with the underlying claim." *See id.* at 493. For the reasons explained above, Agri-

Marketing has failed to plausibly allege a fraudulent transfer claims against the Defendants.

Accordingly, its unjust enrichment claim must similarly fail and is dismissed with prejudice.

**G.      Agri-Marketing's request for fees is stricken.**

Finally, Defendants move to strike Agri-Marketing's request for "fees" in the wherefore

clauses of the Second Amended Complaint. As Agri-Marketing has not opposed this request, the

request is granted.

**V.      Conclusion**

For the reasons set forth above, the Court denies Defendants' motion to dismiss for

improper venue, but grants its motion to dismiss Counts III, IV, and V of the Second Amended

Complaint.[12] A separate order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge

---

[12]      Because the Court has dismissed these claims, it need not address the parties' arguments
concerning the propriety of piercing the corporate veil with respect to these claims.